UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAULETTE M. BRUCE; JESSEL BRUCE; | ) ) ) | |
| Plaintiffs, | ) ) ) ) | CIVIL ACTION<br><br>File No. |
| v. | ) ) | |
| CACH, LLC; P. SCOTT LOWERY, P.C. | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COME the Plaintiffs, PAULETTE M. BRUCE and JESSEL BRUCE ("Plaintiffs"), by and through their attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, CACH, LLC and P. SCOTT LOWERY, P.C. ("Defendants"), as follows:

**NATURE OF THE ACTION**

1. Plaintiffs bring this action for damages for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (hereinafter "FDCPA").

**JURISDICTION AND VENUE**

2. This action arises under, and is brought pursuant to, the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d), 28 U.S.C. §§ 1331, 1337, as the action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391; Defendants do business in this District and all of the events or omissions giving rise to the claim occurred within this District.

## PARTIES

4. Plaintiff Paulette M. Bruce is a natural person residing at 2079 Chesterfield Lane, Aurora, Illinois 60503.

5. Plaintiff Jessel Bruce is a natural person residing at 2079 Chesterfield Lane, Aurora, Illinois 60503.

6. At all times relevant to the action, the Defendant, CACH, LLC, was a limited liability corporation with offices located in Denver, Colorado. CACH, LLC is a third-party debt purchaser that is in the business of purchasing debts. Some of the debts purchased by CACH, LLC ("CACH") are debts allegedly held by Illinois consumers.

7. At all times relevant to the action, the Defendant, P. Scott Lowery, P.C., was a law office located in Greenwood Village, Colorado. P. Scott Lowery, P.C. is a law firm in the business of collecting debts for third-party creditors on a nationwide basis. P. Scott Lowery, P.C. ("Lowery") is in the business of collecting debts from Illinois residents.

## FACTS SUPPORTING CAUSE OF ACTION

8. During the month of September 2004, Plaintiff Jessel Bruce ("Jessel") obtained a consumer credit card from Wells Fargo Bank ("WF Credit Card").

9. During 2005, Jessel had a WF Credit Card issued in the name of his wife, Plaintiff Paulette M. Bruce ("Paulette").

10. The WF Credit Card issued in Paulette's name was tied to the same account held by Jessel.

11. Jessel saved each WF Credit Card issued to Paulette in a safe located in their home. These cards are largely still attached to the letters that accompanied them.

12. Paulette never used any of the WF Credit Cards.

13. Paulette never activated any of the WF Credit Cards.

14. In Illinois, "the issuance of a credit card is but an offer to extend a line of open account credit. It is unilateral and supported by no consideration . . . use of the card by the offeree makes a contract between the parties according to its terms." *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 679 (1st Dist. 1982).

15. Moreover, "a separate contract is created each time the card is used according to the terms of the cardholder agreement at the time of such use." *Id.* at 678.

16. On June 30, 2012, Jessel filed a Chapter 7 bankruptcy as an individual.

17. On September 25, 2012, Jessel received his bankruptcy discharge.

18. Wells Fargo received notice of Jessel's Chapter 7 filing and his discharge. *See* Exhibit A, true and correct copies of the notice of meeting of the creditors and the notice of discharge.

19. CACH allegedly purchased the WF Credit Card account on August 23, 2012.

20. CACH hired Lowery to collect the defaulted debts that it purchased from Wells Fargo.

21. CACH entered into an agreement with Lowery regarding the means and manner of collection.

22. At approximately 6:18 P.M., Central Standard Time, on September 5, 2012, Lowery, in an attempt to collect a debt, called 630-730-5446, the number associated with Jessel's cellular phone.

23. Jessel allowed the call to go to voice mail.

24. Lowery left a voice mail for Paulette.

3

25. Lowery then placed a call to 630-236-9236, the number associated with Jessel and Paulette's home.

26. When the calls were made, Jessel and Paulette were at home. Paulette was convalescing from a recent surgery and Jessel was at home tending to her needs.

27. Jessel called the number left on his voice mail and was informed that the call was related to a Wells Fargo credit card in Paulette's name.

28. On September 7, 2012, Jessel and Paulette received a letter from Lowery dated September 1, 2012. The letter was addressed to Paulette and stated that Paulette owed CACH, LLC the sum of $2,571.32. *See* Exhibit B, a true and correct copy of the September 1 letter.

29. The phone calls and written communications were highly upsetting to both Jessel and Paulette.

30. On or about September 8, 2012, Nathan Volheim ("Volheim"), one of Plaintiffs' attorneys, called Lowery to dispute the debt.

31. On or about December 3, 2012, Lowery sent Volheim a letter, a document entitled "Account Information Report," and a redacted copy of a document entitled, "Exhibit A Short Form Purchase Agreement." *See* Exhibit C, a true and correct copy of the December 3 correspondence.

32. On January 28, 2013, Lowery called Plaintiffs' attorneys to inquire as to whether Paulette was represented by the firm.

33. Before obtaining verification of Paulette's representation status, Lowery disconnected the call and called Jessel's cellular phone.

34. Jessel answered the call and then used three-way calling to add Matthew Hector ("Hector"), another one of Plaintiffs' attorneys into the phone call.

4

35. Hector verbally reaffirmed that Paulette was represented by counsel.

36. Hector then faxed a letter to Lowery indicating that Plaintiffs were represented by an attorney. *See* Exhibit D, a true and correct copy of the January 28, 2013 correspondence.

### COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (BY PAULETTE AGAINST CACH AND LOWERY)

37. Plaintiffs repeat and reallege paragraphs 1 through 33 as though fully set forth herein.

38. The Defendants violated 15 U.S.C. §§1692b(2) and 1692b(6) by contacting Jessel after knowing that Paulette and Jessel were both represented by an attorney and by stating to Jessel that Paulette owed a debt related to the WF Credit Card.

39. These third-party communications to Jessel regarding Paulette are prohibited under the Fair Debt Collection Practices Act ("FDCPA").

40. Defendants also violated 15 U.S.C. §§1692c(a)(2) and 1692c(b) by attempting communication with Paulette after being told that she was represented by counsel and by communicating about Jessel with regards to the debt allegedly owed by Paulette.

41. Defendants violated 15 U.S.C. §1692e(2) by attempting to collect a debt from Paulette that was never incurred by Paulette. Since Paulette never activated or used the WF Credit Card, Paulette never entered into a contract with Wells Fargo and has no personal obligation to repay any debt allegedly owed to Wells Fargo or CACH.

42. Defendants violated 15 U.S.C. 1692e(8) by reporting false information regarding the WF Credit Card to Equifax, TransUnion, and Experian. In particular, Defendants have reported that Paulette owes a debt to CACH, that the account is delinquent, and that it is an individual credit card account.

5

43. Upon information and belief, it is part of Defendants' normal business practices to contact third parties in an attempt to collect a debt.

44. Upon information and belief, it is part of Defendants' normal business practices to communicate with debtors after being advised that they are represented by counsel.

45. Upon information and belief, it is part of Defendants' normal business practices to report false credit information about debtors.

46. The Plaintiff, as a result of the conduct of the Defendant, has suffered mental anguish and emotional distress.

47. The Plaintiff is therefore entitled to an award of statutory damages, actual damages, punitive damages and legal fees pursuant to 15 U.S.C. 1692k.

WHEREFORE, Plaintiff PAULETTE M. BRUCE respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. ordering the deletion of all adverse credit reporting related to the loan;

d. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (BY JESSEL AGAINST CACH AND LOWERY)

48. Plaintiffs repeat and reallege paragraphs 1 through 33 as though fully set forth herein.

49. The Defendants violated 15 U.S.C §1692e(10) by making false representations to Jessel regarding the status of the debt allegedly owed by Paulette.

50. The Defendants knew or should have known about Jessel's Chapter 7 bankruptcy filing.

51. Aware that Jessel was protected by the U.S. Bankruptcy Code and the discharge order, Defendants began collection attempts against Paulette.

52. These collection attempts were designed to circumvent Jessel's bankruptcy discharge.

53. Defendants knew or should have known that Jessel had filed a Chapter 7 bankruptcy when the debt was purchased from Wells Fargo.

54. Defendants knew or should have known that Jessel would soon be uncollectable.

55. Prior to Jessel's bankruptcy filing, Wells Fargo reported the credit card as a joint account.

56. Since the account was purchased by CACH, it has been reported on Paulette's credit report as an individual account.

57. Defendants have changed how the trade line is reported in order to make it appear that Paulette has always been sole owner of the account.

58. Moreover, Defendants intended that this false credit reporting and the collection attempts would spur Jessel to make a payment on the discharged debt to protect Paulette from further harassment.

59. Defendants knew or should have known that Paulette never used or activated her WF Credit Card.

60. As such, Defendants knew that Paulette did not owe any debt to Wells Fargo or CACH, but attempted to collect the amount that Jessel had discharged in his Chapter 7 bankruptcy.

61. Although the Defendants appeared to direct their collection attempts toward Paulette, they intended that Jessel would ultimately remit a payment to stop the continued harassment of his wife.

62. In particular, the Defendants have caused a collection account trade line to appear on Paulette's Equifax, Experian, and TransUnion credit reports.

63. This trade line indicates that Paulette's debt to Wells Fargo is an individual debt obligation. However, Paulette never incurred any individual debts on the WF Credit Card because she never used the card.

64. As such, Defendant's attempts to collect against Paulette also represent the use of a deceptive means to collect a debt from Jessel.

65. The Plaintiff, as a result of the conduct of the Defendant, has suffered mental anguish and emotional distress.

66. The Plaintiff is therefore entitled to an award of statutory damages, actual damages, punitive damages and legal fees pursuant to 15 U.S.C. 1692k.


WHEREFORE, Plaintiff JESSEL BRUCE respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. awarding Plaintiff statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying FDCPA violations;

   c. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k;  and

   d. awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT III -- VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (BY JESSEL AND PAULETTE AGAINST CACH AND LOWERY)**

67. Plaintiffs restate and reallege paragraphs 1 through 33 as though fully set forth herein.

68. The Defendants violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in its attempt to collect a discharged debt from Jessel and a debt that was not owed by Paulette from Paulette.

69. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

70. Defendants' attempt to collect a debt is part of the conduct of any trade or commerce.

71. Defendants' reporting false information about Paulette to TransUnion, Equifax, and Experian is the employment of deception and the misrepresentation of material fact in the furtherance of Defendants' debt collection efforts.

72. Defendants' attempts to collect a debt that Paulette did not owe is an unfair and deceptive act designed to spur Jessel to make a payment in order to protect his spouse.

73. Defendants' repeated misrepresentations with regard to Paulette's liability for the balance of the WF Credit Card also violate ICFA.

74. Defendant intended that Plaintiff rely on its misrepresentations.

75. ICFA further states:

9

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.
>
> 815 ILCS 505/10a

76. As pled above, Plaintiffs were harmed by Defendants' unfair and deceptive practices.

77. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which the Defendants routinely engage as part of their business model.

78. As such, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiffs, JESSEL BRUCE and PAULETTE M. BRUCE, respectfully request that this Honorable Court enter judgment in their favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiffs actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. ordering the deletion of all adverse credit reporting related to the WF Credit Card;

d. awarding the Plaintiffs costs and reasonable attorney fees;

e. awarding any other relief as this Honorable Court deems just and appropriate.

## Jury Demand

Plaintiff demands trial by jury.

                                            Respectfully Submitted,

                                        By: ___s:/Ahmad. T. Sulaiman____

                                                **Ahmad T. Sulaiman**
                                                Attorney for Plaintiffs

| | |
|---|---|
| **Name** | Sulaiman Law Group, Ltd. |
| **ARDC #:** | 6279456 |
| **Attorney for:** | Plaintiff |
| **Address:** | 900 Jorie Blvd., Suite 150 |
| **City/State/Zip:** | Oak Brook, IL 60523 |
| **Telephone:** | (630) 575-8181 |